UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL V. WOODHAM, )<br>)<br>Defendant. ) | No. 6:18-CR-00053-REW-HAI<br><br>OPINION & ORDER |

*** *** *** ***

On October 3, 2019, the Court sentenced Defendant Michael V. Woodham to 109 months' imprisonment for receipt of child pornography. *See* DE 47 (Sentencing Hearing Minute Entry); DE 49 (Judgment). Woodham, currently incarcerated at FCI Oakdale I, *pro se* moved for compassionate release. *See* DE 53 (Motion). 18 U.S.C. § 3582 governs his request.

As amended by the First Step Act of 2018 (Pub. L. No. 115-391, 132 Stat. 5194 (2018)), 18 U.S.C. § 3582 requires an inmate seeking compassionate release either to "fully exhaust[ ] all administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf" or to wait "30 days from the receipt of such a request by the warden" before filing a motion with the Court. 18 U.S.C. § 3582(c)(1)(A). The Sixth Circuit has held that the exhaustion requirement, though non-jurisdictional, is a "mandatory condition" and, when "properly invoked," it "must be enforced." *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020) (internal quotation marks omitted). Only two exceptions apply: waiver or forfeiture. *See id.*; *see also Hamer v. Neighborhood Hous. Servs. of Chicago*, 138 S. Ct. 13, 17 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous. Forfeiture is the failure to make the timely assertion of a right; waiver is the

1

intentional relinquishment or abandonment of a known right.") (internal alterations and quotation marks omitted).

The Court found that Woodham had satisfied the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A) (*See* DE 54 (Order)), citing Woodham's claim that FCI Oakdale's warden never responded to his compassionate release request. *See* DE 53 at 2. The Court ordered the Government to respond to Woodham's motion on the merits and gave Woodham time to reply. *See* DE 54. The Government responded. *See* DE 56 (Government Merits Response). Woodham replied after the Court-imposed deadline of August 29, 2022. *See* DE 59 (Reply to Response).[1] The matter is ripe for review.

### I.   Legal Background

Generally, a "court may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c). However, Congress has established certain narrow exceptions. One such exception provides:

> [T]he court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (relevant portions included).[2] By separate statute, Congress in 1984 explicitly directed the United States Sentencing Commission to define "extraordinary and

---

[1] Woodham also moved for additional briefing. *See* DE 60. The Court views the briefing as adequate, and the areas Woodham seeks to expand on would not here impact the ultimate result. Indeed, Woodham made a full reply at DE 59. His endeavor to supplement seemingly only desires to reargue or further argue the merits of the risk analysis. The papers already cover the topic. The Court DENIES DE 60.

[2] This is a provision Congress broadened (through a direct federal court portal) as part of the First Step Act of 2018, a criminal justice reform measure passed on December 21, 2018. *See* PL 115-391, 132 Stat 5194.

2

compelling reasons for sentence reduction[.]" 28 U.S.C. § 994(t); *see id.* at (a)(2) (directing promulgation of "policy statements regarding . . . the appropriate use of . . . (C) the sentence modification provisions set forth in . . . [§] 3582(c) of title 18").

The Sentencing Commission responded in 2006, explaining, in relevant part, that "[e]xtraordinary and compelling reasons warrant the reduction; . . . [if the] defendant is not a danger to the safety of any other person or to the community . . . ; and [t]he reduction is consistent with this policy statement." U.S.S.G. § 1B1.13 (2006); *see also United States v. Jones*, 980 F.3d 1098, 1105 (6th Cir. 2020). Over the next twelve years, the Commission left that policy statement unchanged while constructing a list of elucidative circumstances constituting "extraordinary and compelling reasons" in the §1B1.13 application notes. *See Jones*, 980 F.3d at 1104.

When the most recent edition of the Guidelines (2018, unchanged in 2021 edition) was issued, § 3582(c) allowed only the BOP to move for compassionate release. *Id*. That changed when Congress passed the First Step Act, enabling prisoners to circumvent the typically languid BOP and petition courts directly. PL 115-391, 132 Stat 5194; *see also Jones*, 980 F.3d at 1104. Before the Commission could update the Guidelines to reflect this statutory change, "the forces of law and nature collided," and the COVID-19 pandemic gave rise to thousands of prisoner-initiated compassionate release requests. *See Jones*, 980 F.3d at 1100.

As a result of the statute leapfrogging the Guidelines, reviewing courts faced a question: Does § 1B1.13, written with only BOP-initiated release requests in mind, count as an "applicable policy statement" to guide courts' review of prisoner-initiated compassionate release requests? The Sixth Circuit gave a negative answer in *Jones*. *See* 980 F.3d at 1109. As a result, district courts have (at least until the Sentencing Commission updates the Guidelines), "full discretion . . . to

3

determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id*.

Accordingly, the Sixth Circuit established a "three-step inquiry" for prisoner-initiated compassionate release requests.[3] The Court must determine: (1) whether "extraordinary and compelling reasons" warrant a sentence reduction, (2) whether release, if granted, would be "consistent with applicable policy statements issued by the sentencing commission,"[4] and (3) whether release is appropriate in light of the § 3553(a) sentencing factors. *Id.* at 1101.[5] For now, because "the § 1B1.13 policy statement[] is no longer a requirement courts must address[,]" the Court answers only "two questions: (1) whether extraordinary and compelling circumstances merit a sentence reduction; and (2) whether the applicable § 3553(a) factors warrant such a reduction." *United States v. Hampton*, 985 F.3d 530, 531 (6th Cir. 2021).

The Sixth Circuit has provided much guidance to help district courts define "extraordinary and compelling reasons" justifying compassionate release. *See United States v. Hunter*, 12 F.4th 555, 562–63 (6th Cir. 2021). Importantly, *Hunter* opined that "the text and structure of § 3582(c)(1)(A) limit a district court's discretion to define 'extraordinary and compelling' in two ways[.]" *Id.* at 562. First, non-retroactive changes in the law are not "extraordinary and compelling

---

[3] In *Jones*, the district judge "assumed for the sake of argument that extraordinary and compelling reasons existed in Jones's case" before proceeding to decide the case based on a balancing of the § 3553(a) factors. 980 F.3d at 1108. Accordingly, the Court does not see a requirement that each step must occur in a particular sequence. Indeed, the Court could deny by finding any one of the three steps unmet. Granting release, though, requires a positive finding at each one. *See United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021) ("If the court finds that the defendant fails at *any* one of these three steps, it need not address the others before denying the motion.") (emphasis in original) (citing *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)).

[4] Because § 1B1.13 no longer applies here, step two is something of a phantom, at least until a new iteration of the Guidelines issues. In the Court's view, Woodham would not on this record have passed the § 1B1.13 stringent filter. The Court may still consult the Guidelines; the Court simply recognizes that the Guidelines do not presently provide a mandatory analytical gate.

[5] Section 1B1.13 also directs courts reviewing BOP-initiated compassionate release requests to determine, pursuant to 18 U.S.C. § 3142(g), whether granting relief would pose a risk to the safety of others or the community. Per *Jones*, the § 3142(g) evaluation is not explicitly required when reviewing prisoner-initiated § 3582(c) requests. But much of this calculus emerges in the mandatory § 3553(a) evaluation.

4

reasons" to grant a compassionate release motion. *Id.* "Second, facts that existed when the defendant was sentenced cannot later be construed as 'extraordinary and compelling' justifications for a sentence reduction." *Id.* In any § 3582 action, the defendant, as the movant, bears the burden of establishing eligibility for a reduction in sentence. *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013). The *Hunter* Court referenced the "ordinary meaning" of the controlling statutory adjectives "extraordinary and compelling." 12 F.4th at 562 (respectively, "most unusual, far from common, . . . having little or no precedent" and "forcing, impelling, driving"). The discretion extended is an exercise in judgment, not an act of whim. *See id.*

## II. Discussion

### A. Crowding in Prisons and Diminished Immunity from Vaccines and Prior Infections

Woodham first argues that crowding in prisons is contrary to Centers for Disease Control (CDC) guidance regarding the COVID-19 virus. *See* DE 53 at 5-12. Woodham argues that "[p]recautions taken by the Bureau of Prisons to reduce COVID-19 transmission at its correctional facilities does not demean the fact prisons are tinder boxes where a virus, such as COVID-19 and now Monkeypox, can spread rapidly once a person is infected." *Id*. at 6. (citing *United States v. Gonzalez*, 2020 U.S. Dist. LEXIS 85762, *6 (D. Conn. 2020); *United States v. Rodriguez*, 451 F. Supp. 3d 392 (E.D. Pa. 2020)).

Regarding COVID-19 outbreaks pertinent to this application, the BOP reports that, as of November 8, 2022, FCI Oakdale[6] has no positive inmates and only has two positive COVID-19 cases among staff.[7] Of those cases, just one positive COVID-19 case among staff is at FCI Oakdale

---

[6] Statistics for FCI Oakdale contain data from both FCI Oakdale I and FCI Oakdale II.
[7] *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/;jsessionid=32960C32BFF7A1006B47C89723B61AF8 (last visited November 8, 2022).

5

I, where Woodham is currently incarcerated.[8] Of the 2,074 inmates currently incarcerated at FCI Oakdale,[9] 2,069 have been fully inoculated against COVID-19.[10] In light of the promising numbers, FCI Oakdale I has adopted "Minimal Modifications" to protect against COVID-19 spread.[11] Other than general statistics and information regarding overcrowding in prisons, Woodham has not shown that the population size in FCI Oakdale I has resulted in (or currently has produced) a high number of positive COVID-19 cases. In fact, despite the large number of inmates currently incarcerated at FCI Oakdale I, the facility has been able to minimize the spread of COVID-19. Thus, given the vaccine prevalence and access in the relevant inmate population, the minimal COVID-19 cases at the facility, and the precautions FCI Oakdale I is taking to protect against COVID-19 spread, the numbers here do not signify a release basis.

Woodham also argues that prior infection and immunization from available vaccines do not provide long-term protection from future infections. *See* DE 53 at 10-12. He states "[e]vidence has been mounting for the past year that even having COVID-19 once does not confer any medium or long-term immunity." *Id*. at 10. (citing Andrew G. Letizia, et al., *SARS-CoV-2 seropositivity and subsequent infection risk in healthy young adults: a prospective cohort study*, 9 THE LANCET RESPIRATORY MED. 712 (2021); David F. Robbiani et al., *Convergent antibody responses to SARS-CoV-2 in convalescent individuals*, 584 NATURE 437 (2020)). He goes on, stating "[s]cientists presently are issuing studies showing 'a substantial waning of antibody responses and T cell

---

[8] *Id*.
[9] There are currently 920 total inmates incarcerated at FCI Oakdale I. *See FCI Oakdale I*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/oak/ (last visited November 8, 2022). There are currently 1,154 total inmates incarcerated at FCI Oakdale II. *See FCI Oakdale II*, FED BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/oad/ (last visited November 8, 2022).
[10] COVID-19 Coronavirus, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/;jsessionid=32960C32BFF7A1006B47C89723B61AF8 (last visited November 8, 2022).
[11] *FCI Oakdale I*, FED. BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/oak/ (last visited November 8, 2022).

6

immunity to SARS-CoV-2 and its variants, at 6 months following the second immunization . . . .'" *Id*. at 11. (citing Mehul S. Suthar et al., *Durability of immune responses to the BNT162b2 mRNA vaccine*, BIORXIV (Sept. 30, 2021) https://www.biorxiv.org/content/10.1101/2021.09.30.462488v1.)

Despite Woodham's claims, the vast majority of authority, indeed the world's recent experience, indicates that COVID-19 vaccines are the most effective reducer of future infection.[12] Further, COVID-19 vaccines also reduce the severity of infection – resulting in a reduced risk of hospitalization and death.[13] Vaccine effectiveness may wane over time. That is why the CDC recommends booster currency.[14] Additional boosters are being created and made available to the general public as new variants of COVID-19 arise.[15] The vast majority of inmates at FCI Oakdale I have been vaccinated and all have access to available COVID-19 booster shots.[16] This provides significant protection to all inmates currently incarcerated at FCI Oakdale I.

Critically, the Government here demonstrates that Woodham is vaccinated. DE 56 at 4. The BOP records show that Woodham received both the COVID-19 vaccine and the COVID-19 booster. *See* DE 57-3 (BOP Health Records). The vaccine is highly effective and would

---

[12] *COVID-19 Vaccines Work*, CTR. FOR DISEASE CONTROL AND PREVENTION (June 28, 2022) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html. (highlighting that "currently approved or authorized COVID-19 vaccines are safe and effective and reduce your risk of severe illness.").
[13] Y. -Z. Huang and C. -C. Kuan, *Vaccination to reduce severe COVID-19 and mortality in COVID-19 patients: a systemic review and meta-analysis*, 26 EUR. REV. MED. PHARMACOLOGICAL SCI. 1770, 1774 (2022).
[14] *Benefits of Getting A COVID-19 Vaccine*, CTR. FOR DISEASE CONTROL AND PREVENTION (Aug. 17, 2022) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html.
[15] *Stay Up to Date with COVID-19 Vaccines Including Boosters*, CTR. FOR DISEASE CONTROL AND PREVENTION (Nov. 1, 2022) https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html.
[16] COVID-19 Coronavirus, *supra* note 10. ("BOP remains committed to making the vaccine available to all staff and inmates who wish to receive it . . . Inmates have also been offered booster shots in accordance with CDC guidance.")

dramatically enervate the risk argument here.[17] The Sixth Circuit recently confirmed, in *United States v. Traylor*:

> Accepting the serious nature of Traylor's alleged medical conditions, her argument is foreclosed by our recent holding that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' to warrant a sentence reduction."

16 F.4th 485, 487 (6th Cir. 2021) (quoting *United States v. Lemons*, 15 F.4th 747, 750 (6th Cir. 2021)). This forecloses any release case premised on COVID risk, as to Woodham.

Additionally, previous infections have also been shown to provide protection from future COVID-19 infections.[18] Even more, previous COVID-19 infection and later COVID-19 vaccination have been shown to have a protective effect. A recent study has shown that people that previously had COVID-19 can significantly increase their protection against hospitalization and death if they subsequently receive two COVID-19 vaccine doses.[19] As of now, COVID-19 vaccines are the most effective method available to prevent the contraction and spread of the disease. Woodham's arguments to the contrary are not sufficient to refute current guidance by the CDC and entitle him to compassionate release.

### B. Woodham's Medical Condition

---

[17] *See* Wesley H. Self, et al, *Comparative Effectiveness of Moderna, Pfizer-BioNTech, and Janssen (Johnson & Johnson) Vaccines in Preventing COVID-19 Hospitalizations Among Adults Without Immunocompromising Conditions – United States, March-August 2021*, Centers for Disease Control and Prevention: Morbidity and Mortality Weekly Report, September 24, 2021, https://www.cdc.gov/mmwr/volumes/70/wr/mm7038e1.htm, (finding for adults over age 18 without immunocompromising conditions, Moderna offers 93% vaccine effectiveness and Pfizer offers 91%).

[18] *Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity*, CTR. FOR DISEASE CONTROL AND PREVENTION (Oct. 29, 2021) https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/vaccine-induced-immunity.html. ("Available evidence shows that fully vaccinated individuals and those previously infected with SARS-CoV-2 each have a low risk of subsequent infection for at least 6 months.")

[19] Kimberlee D'Ardenne, *COVID-19 vaccines reduce hospitalization, death in people with prior infection, study finds*, Stanford Medicine News Center, https://med.stanford.edu/news/all-news/2022/03/covid-19-vaccines-prior-infection.html#:~:text=prior%20infection%20Story-,COVID%2D19%20vaccines%20reduce%20hospitalization%2C%20death%20in%20people,with%20prior%20infec infe%2C%20study%20finds&text=Two%2Ddose%20COVID%2D19%20vaccines,illness%20before%20they%20w wer%20immunized. (last visited September 22, 2022).

Woodham next argues that a medical condition makes him vulnerable to COVID-19, thus warranting compassionate release. *See* DE 53 at 13-14. Woodham alleges that he suffers from hypertension. *See* DE 48 at 12 (Sealed Presentence Investigation Report); DE 53 at 14; and DE 59 at 1. Hypertension is an underlying health condition that the CDC has identified as possibly increasing the likelihood of severe COVID-19 related illness.[20] Woodham's BOP medical records support, if mildly, his hypertension diagnosis. *See* DE 57-2 at 19. According to his records, Woodham was diagnosed with borderline hypertension on October 31, 2019. *Id*. Since August 17, 2020, his records indicate that he continued with the same medicine regime and was monitored per protocol. *Id*. at 27. Woodham's diagnosis has remain unchanged since 2019. *Id*. at 19.

Booster access and availability essentially forecloses the § 3582 gate. However, the Court briefly discusses detail surrounding Woodham. First, as stated above, FCI Oakdale I has taken significant steps to curtail the spread of COVID-19 within the institution. Nearly all inmates incarcerated at FCI Oakdale I are vaccinated, and present COVID-19 cases are minimal. Second, as to vulnerability, a diagnosis of hypertension is not itself likely sufficient to require compassionate release. In *United States v. Profitt*, an inmate was denied compassionate release after alleging that she was suffering from, among other things, high blood pressure. No. CR 5:19-032-DCR, 2021 WL 952280, at *2 (E.D. Ky. Mar. 12, 2021). Additionally, courts routinely have denied compassionate release motions alleging like health conditions during COVID-19, particularly when the defendant is receiving treatment. *See*, *e.g., United States v. Lopez*, No. 6:16-CR-16-GFVT-EBA-1, 2022 WL 1105653, at *2 (E.D. Ky. Apr. 12, 2022) (denying compassionate release to an elderly inmate with asthma and depression during COVID-19). As indicated in

---

[20] Amena Abbas et al., *Commitment to Hypertension Control During the COVID-19 Pandemic: Million Heats Initiative Exemplars*, 19 PREVENTING CHRONIC DISEASE PUB. HEALTH RSCH, PRAC., POL'Y 1, 1-2 (2022).

9

Woodham's medical records, he continues to receive treatment at the BOP for hypertension. *See* DE 57 at 27, 46.

Simply put, Woodham has been vaccinated and, like others at his site, he has access to vaccine currency. Further, the circumstances in the facility are well controlled. Nothing in the medical record suggests an extraordinary and compelling condition, relative to COVID and Woodham's health. The Court finds this predicate argument unpersuasive.

### C. Woodham's Family Circumstances

Next, Woodham argues that his family circumstances justify a reduced sentence. *See* DE 53 at 28-29. Specifically, he claims that his minor son is not currently in a secure environment. *Id*. He alleges that his son's mother is expected to serve up to two years in prison for nonpayment of child support. *Id*. Additionally, he alleges that his wife is prescribed psychotropic medication and must be constantly monitored. *Id*. Woodham worries that his son will be placed in foster care where he may be subject to abuse. *Id*.

Notably, Woodham has the burden here, and he offers no proof (no documentation, no affidavits, no court or other records) regarding the family circumstance. The Court is unwilling to credit unsubstantiated allegations relative to an argument of this significance. This alone is a reason to reject the theory.

Although the Court is no longer bound to follow U.S.S.G. § 1B1.13 after *Jones*, the Court finds the Guidelines' examples of extraordinary and compelling family circumstances at least instructive.[21] 980 F.3d at 1109. The Sentencing Commission underscored two scenarios where a

---

[21] U.S.S.G. § 1B1.13 Application Note 1 reads:

> Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> (A) . . .
> (C) Family Circumstances.

10

defendant's family circumstances would be extraordinary and compelling. *See* U.S.S.G. § 1B1.13, comment (n.1(C)). The first scenario arises when an imprisoned defendant's minor children may not receive adequate care because the children's primary caregiver dies or becomes incapacitated. *Id.* The second scenario occurs when an imprisoned defendant's spouse or registered partner can only receive adequate care from the defendant. *Id.* Incapacitation occurs when a person "cannot carry on any self-care." *United States v. Marshall*, 2020 WL 114437, at *3 (W.D. Ky. Jan. 9, 2020). "[D]istrict courts have routinely denied motions for compassionate release when the defendants cannot show that they would be the only caregiver of a minor child, even if their incarceration imposes substantial burdens on a spouse or co-parent to a minor child." *United States v. Cole*, 2021 WL 19494, at *2 (E.D. Mich. Jan. 20, 2021); *see also Marshall*, 2020 114437 at *3; *United States v. Thornton*, No. 18-167-1, 2020 WL 4368155, at *5 n.10 (W.D. Pa. July 29, 2020); *United States v. Shine*, No. 14-0451, 2020 WL 3440654, at *3 (N.D. Tex. June 23, 2020).

The Court notes that, per the PIR, both of Woodham's biological parents and one stepparent are still alive. *See* DE 48 at 11. He also has a half-brother and sister. *Id*. His immediate family resides in Alabama, the same state where his son and wife currently live. *Id*. The record does not establish the Woodham's wife will be unavailable. The record does not establish that, even if Woodham's wife is unavailable, that foster care is the sole option. Speculation is not enough under § 3582.

Woodham says (again, with no proof) that financial support from secondary family is "not practical . . . [because] they are financially unstable." *See* DE 53 at 28. He argues that his release will provide his son the financial and familial stability he needs, largely due to his promised

---

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or the registered partner.

11

employment at Polar Bear Services upon release. *See* DE 59 at 3-4. Woodham received a long sentence because of his grave crime. A cost of crime is severance from family and disruption in family relationships. Woodham does not show, here, that only he is in a current position to steward his son. All other concerns the Court might otherwise have aside, the predicate showing fails.

### D.  18 U.S.C. § 3553(a) Factors

Even if the Court found Woodham's proffered reasons extraordinary and compelling, the Court would not here release. At the sentencing hearing, the Court assessed the full record and crafted a parsimonious sentence compliant with 18 U.S.C. § 3553(a) and governing law. *See* DE 49. That result reflected all sentencing factors and purposes in the context of Woodham's offense – receipt of child pornography. Given Woodham's record, the details of the crime, and additional considerations in the record, the Court imposed a valid sentence in the middle of the recommended Guidelines range. *See* DE 48 at 16; DE 49 at 2. Notably, Woodham was a 30/I; the offense level resulted from aggravators including victim (prepubescent) age, portrayals of sadistic or masochistic conduct, and possession of 600 or more images. *See* DE 48 at ¶¶ 32-35. Further, Woodham's receipt (and/or the images included in relevant conduct) included females he knew or was in contact with, heightening the Court's concerns about danger. As the Court explained at the time, in its statement of reasons:

> Crime severity, (specific and general) deterrence, and public protection needs are the primary sentence drivers here. Defendant's receipt, storage, and prizing of such vile images renders him gravely culpable. Woodham's victims are among society's most innocent and vulnerable. A just punishment for Woodham, on this record, is a significant sentence and a guideline sentence.

In formulating the result, the Court took careful note of Woodham's strong work record, his quick acknowledgement of guilt, and his otherwise clean record. These mitigators positively affected the sentence, as a relative matter, but the crime demanded a stout carceral term, just what Woodham received. The Court viewed and views Woodham as a man capable of working and

avoiding most crime but plainly capable of committing among the most harmful and egregious of offenses. He presents societal risk, which the sentence responsibly protects against. The intervening years have not changed that calculus.

The § 3553(a) factors cut against early release. The Court sentenced Woodham to just over than nine years in prison, but three years ago. *See* DE 49 at 2. Woodham has only served (as of US briefing) 41% of his full term and 48% of his statutory term. *See* DE 56 at 9. To release Woodham now would create a shell of the judgment and severely undercut the § 3553(a) justifications—especially protection and demonstration of crime gravity. Thus, even if Woodham demonstrated extraordinary and compelling reasons for relief, the Court would reject his motion under the required consideration of applicable § 3553(a) factors. Woodham must pay his debt to society. His good intentions and claimed rehabilitation, while positive markers, do not displace the carefully crafted and parsimonious sentence imposed. The record here does not support Woodham's early release.

### III.    Conclusion

The Court, considering the full record, making the stated findings, and in its discretion, **DENIES** DE 53 and rejects Woodham's request for a reduced sentence.[22]

This the 9th day of November, 2022.

---

[22] Woodham also makes § 3624 early release or home confinements arguments. First, BOP discretion governs inmate placement. *See United States v. Lopez*, 2022 WL 1105653, at *4 (E.D. Ky. Apr. 12, 2022)("The CARES ACT makes placement into home confinement a matter of BOP discretion."). Second, a § 3582 motion is not a proper vehicle for challenging the constitutionality of the BOP administrative criteria.



Signed By:
*Robert E. Wier*
**United States District Judge**